

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.                                              CRIMINAL NO. 3:19 cr 20 CWR-LRA

WILLIAM B. MCHENRY, JR.                         18 U.S.C. § 1348
                                                18 U.S.C. § 1349
                                                18 U.S.C. § 1343

**The Grand Jury charges:**

<u>INTRODUCTION</u>

1.      Defendant **WILLIAM B. MCHENRY, JR.** ("**MCHENRY**") is a resident of Mississippi whose primary place of business is in Madison, Madison County, Mississippi.

2.      Madison Timber Fund, LLC, was a Mississippi Limited Liability Company formed in 2009, and wholly owned by ARTHUR LAMAR ADAMS.  Madison Timber Fund, LLC, was administratively dissolved in 2017.

3.      Madison Timber, LLC, was a Mississippi Limited Liability Company formed in 2011, and wholly owned by ARTHUR LAMAR ADAMS.  Madison Timber, LLC, was administratively dissolved in 2017.

4.      Madison Timber Properties, LLC ("Madison Timber Properties") was a Mississippi Limited Liability Company with offices at 742 Magnolia Street, Madison, Mississippi.

5.      First South Investments, LLC is a Mississippi Limited Liability Company wholly owned by defendant **WILLAM B. MCHENRY, JR.**, with offices at 742 Magnolia Street, Madison, Mississippi. From 2010 through April 2018, defendant **MCHENRY** rented the shared office space to Madison Timber Properties and worked there alongside ADAMS and Madison

Timber Properties.

<u>THE SCHEME AND ARTIFICE TO DEFRAUD</u>

6.      Beginning at least as early as 2008 and continuing through April 2018, in the Northern Division of the Southern District of Mississippi and elsewhere, the defendant, **WILLIAM B. MCHENRY, JR.**, aided and abetted by others, did knowingly and intentionally participate in a scheme and artifice to defraud investors by soliciting millions of dollars of funds under false pretenses, failing to use investors' funds as promised, and misappropriating and converting investors' funds to **MCHENRY's** own benefit and the benefit of others without the knowledge or authorization of the investors.

7.      Defendant **MCHENRY** falsely and fraudulently represented to investors that Madison Timber Properties was in the business of buying timber rights from landowners and then selling the timber rights to lumber mills at a higher price.   The object was to cause persons to invest in loans that purportedly were for the purpose of financing such contracts for the purchase of timber rights to be sold to lumber mills. In fact, neither **MCHENRY** nor Madison Timber Properties had such timber rights or contracts with lumber mills, except in only a few instances. In furtherance of the scheme and artifice to defraud, **MCHENRY** falsely and fraudulently represented to investors that their money would be invested in the purchase of such timber rights, when the money would not be so invested.

8.      In furtherance of the scheme and artifice to defraud, defendant **MCHENRY** concluded investment contracts with investors, most often in the form of promissory notes on behalf of Madison Timber Properties.   The loans typically guaranteed investors an interest rate of 12 to 13 percent, which was to be repaid to investors over the course of twelve to thirteen months.

2

The monthly payments due on these promissory notes were typically due either the first or the fifteenth of the month.

9.      In fact, this was a sophisticated Ponzi scheme. Instead of investing the investors' money, ADAMS used the invested funds for his own personal benefit and the benefit of others, and for purposes other than those represented to investors.   Participating in the scheme and artifice to defraud, **MCHENRY** on behalf of Madison Timber Properties fraudulently obtained well over eighteen million dollars ($18,000,000) from more than 20 investors.

10.      In furtherance of the Ponzi scheme, **MCHENRY** and others created false documents to lull investors into believing that their investments were secured by sufficient collateral from which they could recover all or part of their investment in the event that Madison Timber Properties defaulted on the loans.   Specifically, **MCHENRY** and others created false timber deeds purporting to be contracts conveying timber rights from landowners to Madison Timber Properties. The timber deeds contained forged signatures of landowners, those landowners' names often having been obtained from timber maps. **MCHENRY** and others also created false timber deeds purporting to convey those timber rights from Madison Timber Properties to the investors.   In fact, Madison Timber Properties did not hold valid timber rights on the parcels of land described in the false timber deeds which **MCHENRY** uttered. To further lull the investors, many of the documents were notarized to make the investments appear to be legitimate. To further conceal the scheme, **MCHENRY** and others required the investors to agree not to record their timber deeds unless Madison Timber Properties defaulted on the loan agreement by failing to make a payment.

11.      In furtherance of the Ponzi scheme, **MCHENRY** represented to investors that he

3

had confidence in the timber deeds, as well as the associated contracts with Madison Timber Properties for the timber.   In fact, **MCHENRY** had made no inquiry.

12.     Instead of using the money as promised for the purpose of cutting timber, ADAMS and Madison Timber Properties used the proceeds for other fraudulent purposes and to further the scheme, including but not limited to making payments due and owing to other investors. It was further part of the scheme and artifice to defraud that defendant **MCHENRY** received undisclosed commissions for recruiting investors to Madison Timber Properties. **MCHENRY** falsely held himself out as a principal officer, partner, owner or director of Madison Timber Properties, and as an investor of his own money in Madison Timber Properties. In fact, **MCHENRY** had no such office and authority, and **MCHENRY** had no personal investment in Madison Timber Properties, but **MCHENRY** received ten percent of all monies raised and invested by the investors whom **MCHENRY** recruited, as a commission paid to **MCHENRY** from those very same investment funds.   **MCHENRY** did not disclose the fact of his commission, or the percentage of his commission, to the investors he recruited.

13.     It was further part of the scheme and artifice to defraud that ADAMS lulled and persuaded investors to maintain their investments and to invest additional funds by making payments to some investors by way of post-dated checks.   **MCHENRY** contributed to this lulling tactic by forwarding the checks to the investors **MCHENRY** recruited.   It was **MCHENRY's** routine practice to interact directly with investors whom **MCHENRY** had recruited, and to distance them from ADAMS, which practice further lulled investors.

14.     It was further part of the scheme and artifice to defraud that defendant **MCHENRY** lulled and persuaded investors to maintain their investments and to invest additional funds by

4

offering his own personal guarantee of their investments.

15.     It was part of the scheme and artifice to defraud that defendant **MCHENRY** knew and intended that his false and fraudulent pretenses, representations, and promises would induce investors to entrust money to him, and that a Ponzi scheme would cause them to suffer financial losses while he benefitted from the fraudulent scheme, as **MCHENRY** received only undisclosed commission payments and was not, as he held himself out to be, personally invested.

COUNT 1
(Securities and Commodities Fraud: 18 U.S.C. § 1348)

16.     Paragraphs 1 through 15 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

17.     From on or about 2008, the exact date being unknown to the Grand Jury, through on or about May 16, 2018, in Madison County in the Northern Division of the Southern District of Mississippi, the defendant, **WILLIAM B. MCHENRY, JR.**, aided and abetted by others, did knowingly, and with intent to defraud, execute, attempt to execute, and cause the execution of, a scheme and artifice to defraud and to obtain moneys, funds, and other property in connection with the purchase or sale of a commodity for future delivery, and an option on a commodity for future delivery, by means of materially false and fraudulent pretenses, representations, and promises, all in violation of Title 18, United States Code, Sections 1348, 1349 and 2.

## COUNTS 2-3
### (Wire Fraud: 18 U.S.C. § 1343)

18.     Paragraphs 1 through 15 are realleged and incorporated by reference as though fully set forth herein.

19.     Beginning on or about 2008, and continuing through on or about May 16, 2018, the exact dates being unknown to the Grand Jury, in Madison County in the Northern Division of the Southern District of Mississippi, the defendant, **WILLIAM B. MCHENRY, JR.**, aided and abetted by others, did knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain moneys, funds, and other property, that is investor loans, investments and contributions, by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud and for obtaining money and property, and attempting to do so, did knowingly transmit and cause to be transmitted in interstate and foreign commerce by means of wire communications, writings, signs, signals, pictures and sounds.

20.     On or about the dates listed below, in Madison County, in the Northern Division of the Southern District of Mississippi, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, the defendant, **WILLIAM B. MCHENRY, JR.,** did knowingly transmit and cause to be transmitted, in interstate and foreign commerce, by means of wire communications, certain writings, signals, pictures and sounds, as more particularly described for each count below:

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| 2 | September 3, 2014 | Interstate wire transfer of funds in the amount of $100,000 from the Corporate America Credit Union clearinghouse in Irondale, Alabama, on behalf of the Mississippi Federal Credit Union ("MSFCU"), in clearance and payment of a cashier's check issued by MSFCU, to the account of Madison Timber Properties LLC at Trustmark National Bank. |
| 3 | September 4, 2014 | Interstate wire transfer of funds in the amount of $10,000 from the account of Madison Timber Properties LLC at Trustmark National Bank in clearance and payment of check No. 1847, through the Federal Reserve Bank in Atlanta, Georgia, to the account of First South Investments LLC, at First Commercial Bank in Jackson, Mississippi. |

All in violation of Title 18, United States Code, Sections 1343 and 1349.


## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

As a result of committing the offenses as alleged in this Indictment, the defendant shall forfeit to the United States all property involved in or traceable to property involved in the offenses, including but not limited to all proceeds obtained directly or indirectly from the offenses, and all property used to facilitate the offenses.   Further, if any property described above, as a result of

any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property, which cannot be divided without difficulty, then it is the intent of the United States to seek a judgment of forfeiture of any other property of the defendant, up to the value of the property described in this notice or any bill of particulars supporting it.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and 982(b); and Title 28, United States Code, Section 2461.


D. MICHAEL HURST, JR.
United States Attorney


**A TRUE BILL:**
**S/SIGNATURE REDACTED**
**Foreperson of the Grand Jury**


This Indictment was returned in open court by the foreperson or deputy foreperson of the Grand Jury on this the 25th day of __Jan.__, 2019


UNITED STATES MAGISTRATE JUDGE


8